# UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF WISCONSIN
# MILWAUKEE DIVISION

| | |
|---|---|
| DIANE MENEAR, and PATRICIA MERKOVICH, Individually and on Behalf of All Others Similarly Situated, <br><br> Plaintiffs, <br> vs. <br><br> NORTHLAND GROUP, INC., <br><br> Defendant. | Case No.: 17-cv-264 <br><br> **CLASS ACTION COMPLAINT** <br><br><br> **Jury Trial Demanded** |

## INTRODUCTION

1. This class action seeks redress for collection practices that violate the Fair Debt Collection Practices Act, 15 U.S.C. § 1692 *et seq.* (the "FDCPA") and the Wisconsin Consumer Act, Ch. 421-427, Wis. Stats. (the "WCA").

## JURISDICTION AND VENUE

2. The court has jurisdiction to grant the relief sought by the Plaintiff pursuant to 15 U.S.C. § 1692k and 28 U.S.C. §§ 1331 and 1337. Venue in this District is proper in that Defendant directed its collection efforts into the District.

## PARTIES

3. Plaintiff Diane Menear is an individual who resides in the Eastern District of Wisconsin (Waukesha County).

4. Plaintiff Patricia Merkovich is an individual who resides in the Eastern District of Wisconsin (Milwaukee County).

5. Plaintiffs are "consumers" as defined in the FDCPA, 15 U.S.C. § 1692a(3), in that Defendant sought to collect from them debts allegedly incurred for personal, family or household purposes, namely credit card debts.

6. Plaintiffs are also "customers" as defined in the Wisconsin Consumer Act, Wis. Stat. § 421.301(17), in that the alleged debts allegedly arose from consumer credit transactions, namely, alleged credit card accounts.

7. Defendant Northland Group, Inc. ("NGI") is a debt collection agency with its principal offices at 7831 Glenroy Rd., Ste 250, Edina, MN 55439.

8. NGI is engaged in the business of a collection agency, using the mails and telephone to collect consumer debts originally owed to others.

9. NGI is engaged in the business of collecting debts owed to others and incurred for personal, family or household purposes. NGI is a debt collector as defined in 15 U.S.C. § 1692a.

## FACTS

### *Menear Letter*

10. On or about September 26, 2016, NGI mailed a debt collection letter to Plaintiff Bentley regarding an alleged debt, allegedly owed to "CAPITAL ONE, N.A." ("Capital One"). A copy of this letter is attached to this complaint as Exhibit A.

11. The alleged debt identified in Exhibit A is a credit card account used for personal, family or household purposes.

12. Upon information and belief, Exhibit A is a form letter, generated by computer, and with the information specific to Plaintiff inserted by computer.

13. Upon information and belief, Exhibit A is a form debt collection letter used by NGI to attempt to collect alleged debts.

14. Exhibit A contains the following text:

> At this time, CAPITAL ONE, N.A. has informed us that your account meets its requirements for possible legal action. No final decision about possible legal action on this account will be made until more than 30 days after your receipt of this notice to allow time for you to exercise your rights set forth below.

2

Exhibit A.

15. The above language is false, misleading and confusing to the unsophisticated consumer. NGI has no basis to make such claims.

16. Capital One is the eighth largest bank in the United States. https://en.wikipedia.org/wiki/Capital_One. In addition to credit cards, it specializes in home loans, auto loans, banking and savings products.

17. NGI has no basis to assert that Capital One has determined that Plaintiff's account meets Capital One's requirements for possible legal action.

18. Upon information and belief, NGI has no input in, or inside information into Capital One's business practices with respect to lawsuits or otherwise.

19. Lawsuits are not the "regular course" for Capital One. Upon information and belief, Capital One sends the vast majority of post charge-off, delinquent accounts to collection agencies and/or to debt purchasers, and also continues ordinary, telephonic and direct mail collection efforts on its own behalf, instead of initiating legal action.

20. Upon information and belief, Capital One does not "inform" Northland that a consumer's account "meets [Capital One's] requirements for possible legal action."

21. Upon information and belief, Capital One had not made a decision whether to initiate legal action against Menear, or whether Menear's account "meets [Capital One's] requirements for possible legal action" at the time Capital One placed Menear's debt with NGI for collection.

22. Upon information and belief, the decision of how to collect consumers' accounts is generally made months after letters in the form of Exhibit A is sent to customers, and is often made automatically, by computer, with little or no human input.

3

23. The statements about a possible lawsuit and that "no final decision about possible legal action on this account will be made more than 30 days after your receipt of this notice" together falsely indicate to the unsophisticated consumer that litigation is imminent.

24. Upon information and belief, Capital One has not filed a lawsuit against Plaintiff Menear. A search of CCAP shows no civil actions filed by Capital One against Plaintiff in Wisconsin, almost five months after Defendant sent Exhibit A to Plaintiff.

### *Merkovich Letter*

25. On or around September 28, 2016, Northland mailed a debt collection letter to Plaintiff Merkovich regarding an alleged debt, allegedly owed to "US Bank National Association" ("US Bank"). A copy of this letter is attached to this complaint as Exhibit B.

26. The alleged debt identified in Exhibit B was for an alleged credit card account.

27. The alleged debt identified in Exhibit B was allegedly owed to US Bank and was incurred only for personal, family or household purposes, namely, use of a personal credit card to purchase household goods and services.

28. Upon information and belief, Exhibit B is a form letter, generated by a computer, and with the information specific to Plaintiff inserted by the computer.

29. Upon information and belief, Exhibit B is a form debt collection letter used by NGI to attempt to collect alleged debts.

30. Exhibit B contains the following text:

> Despite many opportunities to resolve this matter, the account remains unpaid. We understand the balance may seem to be out of your reach or out of your budget. You can make payments of $299.70 a month and pay down your amount due while keeping open the option of saving money in the future by settling on the balance. Payments must be no more than 30 days apart. We are not obligated to renew this offer. Please make payments by due dates below. If you need additional time to respond to this offer, please contact us. Coupons are attached for your first three payments and we will send additional coupons if you request them. Upon completion of the payment plan, a letter will be sent confirming the above referenced account has been resolved.

4

31. The statement in <u>Exhibit B</u>: "You can make payments of $299.70 a month and pay down your amount due while keeping open the option of saving money in the future by settling on the balance.," is false, confusing and misleading to the unsophisticated consumer.

32. <u>Exhibit B</u> states or implies a consumer must make monthly payments in order to be eligible for a future settlement offer of less than the full balance. <u>Exhibit B</u> specifically says that a result of making a monthly payment of $299.70 is "keeping open the option" of a future debt settlement.

33. Upon information and belief, and based upon investigation by Plaintiff's counsel, it is Northland's regular practice to mail debt communications to consumers stating that one or more payments would "keep open" the option of settling the debt in the future, and then sending a settlement offer regardless of whether the consumer made a payment.

34. The statement in <u>Exhibit B</u>: "Payments must be no more than 30 days apart," is also confusing and misleading to the unsophisticated consumer. Such broad, open-ended language is inherently confusing to the consumer and an unfair collection practice.

35. The consumer has no way to know from <u>Exhibit B</u> what Northland and/or US Bank means by "Payments must be no more than 30 days apart." 30 days apart could mean payment received, payment postmarked, or payment processed.

36. Northland's language leaves open the possibility that the consumer will make a payment at the offered settlement amount payments, only to be informed that the payment was late and Northland will continue to collect on the remaining balance.

37. The consequences of misleading a consumer with respect to settling a debt are much greater than misleading about the amount of the debt. A payment of the entire debt would leave pennies or, at most, a few dollars left over for payment later. *See eg. Miller v. McCalla,*

*Raymer, Padrick, Cobb, Nichols, & Clark, L.L.C.*, 214 F.3d 872, 876 (7th Cir. 2000). Failing to credit a "late" settlement payment would allow Northland to continue to collect the remaining balance of the alleged debt, plus any additional interest that had accrued.

38. Northland's misrepresentations are material misrepresentations because they mislead the unsophisticated consumer about the nature of the settlement offer.

39. Plaintiffs were confused by Exhibits A-B.

40. Plaintiffs had to spend time and money investigating Exhibits A-B, and the consequences of any potential responses to Exhibits A-B.

41. Plaintiffs had to take time to obtain and meet with counsel, including traveling to counsel's office by car and its related expenses, including but not limited to the cost of gasoline and mileage, to advise Plaintiff on the consequences of Exhibits A-B.

42. The FDCPA creates substantive rights for consumers; violations cause injury to consumers, and such injuries are concrete and particularized. *Quinn v. Specialized Loan Servicing, LLC*, No. 16 C 2021, 2016 U.S. Dist. LEXIS 107299 *8-13 (N.D. Ill. Aug. 11, 2016) (rejecting challenge to Plaintiff's standing based upon alleged FDCPA statutory violation); *Lane v. Bayview Loan Servicing, LLC*, No. 15 C 10446, 2016 U.S. Dist. LEXIS 89258 *9-10 (N.D. Ill. July 11, 2016) ("When a federal statute is violated, and especially when Congress has created a cause of action for its violation, by definition Congress has created a legally protected interest that it deems important enough for a lawsuit."); *Church v. Accretive Health, Inc.*, No. 15-15708, 2016 U.S. App. LEXIS 12414 *7-11 (11th Cir. July 6, 2016) (same); *see also Mogg v. Jacobs*, No. 15-CV-1142-JPG-DGW, 2016 U.S. Dist. LEXIS 33229, 2016 WL 1029396, at *5 (S.D. Ill. Mar. 15, 2016) ("Congress does have the power to enact statutes creating legal rights, the invasion of which creates standing, even though no injury would exist without the statute,"

6

(quoting *Sterk v. Redbox Automated Retail, LLC*, 770 F.3d 618, 623 (7th Cir. 2014)). For this reason, and to encourage consumers to bring FDCPA actions, Congress authorized an award of statutory damages for violations. 15 U.S.C. § 1692k(a).

43. Moreover, Congress has explicitly described the FDCPA as regulating "abusive practices" in debt collection. 15 U.S.C. §§ 1692(a) – 1692(e). Any person who receives a debt collection letter containing a violation of the FDCPA is a victim of abusive practices. *See* 15 U.S.C. §§ 1692(e) ("It is the purpose of this subchapter to eliminate abusive debt collection practices by debt collectors, to insure that those debt collectors who refrain from using abusive debt collection practices are not competitively disadvantaged, and to promote consistent State action to protect consumers against debt collection abuses").

44. 15 U.S.C. § 1692e generally prohibits "any false, deceptive, or misleading representation or means in connection with the collection of any debt."

45. 15 U.S.C. § 1692e(5) specifically prohibits: "The threat to take any action that cannot legally be taken or that is not intended to be taken."

46. 15 U.S.C. § 1692e(10) specifically prohibits the "use of any false representation or deceptive means to collect or attempt to collect any debt."

47. 15 U.S.C. § 1692f generally prohibits "unfair or unconscionable means to collect or attempt to collect any debt."

48. Wis. Stat. § 427.104(1)(L) prohibits: "Threaten[ing] action against the customer unless like action is taken in regular course or is intended with respect to the particular debt."

## COUNT I – FDCPA

49. Plaintiffs incorporate by reference as if fully set forth herein the allegations contained in the preceding paragraphs of this Complaint.

50. Count I is brought on behalf of Plaintiff Merkovich.

51. The language in Exhibit A states and/or implies that Northland and the creditor would not offer a settlement for less than the balance if the consumer does not first enter into the payment plan specified in Exhibit A.

52. Such statements and implications are false. In fact, Northland and the creditors would offer to settle Plaintiffs' and Class members' accounts for less than the balance due regardless of whether Plaintiffs and Class members made any payments or entered into a payment plan.

53. Exhibit B also includes an offer that is misleading as to when the offer may expire.

54. A consumer who mails in a settlement payment, on or near one of the 30 day "deadlines," may not have actually settled the claim if Northland decides, on its own whim, that the payment was late and the offer expired prior to the payment.

55. Northland violated 15 U.S.C. §§ 1692e, 1692e(2)(a), 1692e(10) and 1692f.

## **COUNT II – FDCPA**

56. Plaintiffs incorporate by reference as if fully set forth herein the allegations contained in the preceding paragraphs of this Complaint.

57. Count II is brought on behalf of Plaintiff Menear.

58. Exhibit A falsely threatens that Capital One may institute possible legal action against Plaintiff.

59. The threat was false and misleading to the unsophisticated consumer.

60. NGI has no knowledge of or influence on Capital One's internal procedures with respect to bringing lawsuits, and thus had no basis to include the language from Exhibit A, quoted in Paragraph 14 of this Complaint.

61. NGI's conduct violates 15 U.S.C. §§ 1692e, 1692e(5), 1692e(10), and 1692f.

## COUNT III – WCA

62. Plaintiffs incorporate by reference as if fully set forth herein the allegations contained in the preceding paragraphs of this Complaint.

63. Count III is brought on behalf of Plaintiff Menear.

64. Exhibit A threatens an action against the consumer – legal action – notwithstanding the fact that, upon information and belief, neither NGI nor Capital One had any intention of initiating such action.

65. In fact, NGI had no knowledge of Capital One's litigation procedures and no basis to make the claim in Exhibit A.

66. NGI violated Wis. Stat. § 427.104(1)(L).

## CLASS ALLEGATIONS

67. Plaintiff brings this action on behalf of two Classes.

68. Class 1 consists of (a) all natural persons in the State of Wisconsin (b) who were sent a collection letter in the form represented by Exhibit A to the complaint in this action, (c) seeking to collect a debt for personal, family or household purposes, (d) between February 24, 2016 and February 24, 2017, (e) that was not returned by the postal service. Class One shall be called the "Legal Action" class and is represented by Plaintiff Menear.

69. Class 2 consists of (a) all natural persons in the State of Wisconsin (b) who were sent a collection letter in the form represented by Exhibit B to the complaint in this action, (c)

seeking to collect a debt for personal, family or household purposes, (d) between February 24, 2016 and February 24, 2017, (e) that was not returned by the postal service. Class Two shall be called the "Settlement Payment" class and is represented by Plaintiff Merkovich.

70. Each Class is so numerous that joinder is impracticable. Upon information and belief, there are more than 50 members of each Class.

71. There are questions of law and fact common to the members of each class, which common questions predominate over any questions that affect only individual class members. The predominant common question is whether the Defendant complied with 15 U.S.C. §§ 1692e, 1692e(5), 1692e(10), 1692f, and Wis. Stat. § 427.104(1)(L).

72. Plaintiffs' claims are typical of the claims of the Class members. All are based on the same factual and legal theories.

73. Plaintiffs will fairly and adequately represent the interests of the Class members. Plaintiffs have retained counsel experienced in consumer credit and debt collection abuse cases.

74. A class action is superior to other alternative methods of adjudicating this dispute. Individual cases are not economically feasible.

## JURY DEMAND

75. Plaintiffs hereby demand a trial by jury.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs request that the Court enter judgment in favor of Plaintiffs and the Class and against Defendant for:

(a) actual damages;

(b) statutory damages;

(c) attorneys' fees, litigation expenses and costs of suit; and

(d) such other or further relief as the Court deems proper.

Dated: February 24, 2017

                                               **ADEMI & O'REILLY, LLP**

                         By: s/ John D. Blythin
                             Shpetim Ademi (SBN 1026973)
                             John D. Blythin (SBN 1046105)
                             Mark A. Eldridge (SBN 1089944)
                             Denise L. Morris (SBN 1097911)
                             3620 East Layton Avenue
                             Cudahy, WI 53110
                             (414) 482-8000
                             (414) 482-8001 (fax)
                             sademi@ademilaw.com
                             jblythin@ademilaw.com
                             meldridge@ademilaw.com
                             dmorris@ademilaw.com